IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

AMERICAN AIRLINES, INC.,                    )
a corporation,                              )
                                            )
          Plaintiff,                        )
                                            )
v.                                          )
                                            )
DESPEGAR.COM  USA, INC., a                  )
Delaware corporation,  DESPEGAR            )
ONLINE SRL, a foreign corporation,          )
DESPEGAR.COM AR, S.A., a foreign            )
corporation. DECOLAR.COM, LTDA., a          )
foreign corporation, DESPEGAR.COM          )
CHILE, S.A., a foreign corporation,         )
DESPEGAR.COM, a foreign corporation,        )
DESPEGAR.COM PERU, a foreign                )
corporation,  DESPEGAR.COM                  )
VENEZUELA, a foreign corporation,           )
DESPEGAR.COM SPAIN, a foreign               )
corporation,                                )
                                            )
          Defendants.                       )
                                            )
_____

## COMPLAINT

Plaintiff, American Airlines, Inc., brings this complaint against DESPEGAR.COM  USA,

INC.,   DESPEGAR  ONLINE  SRL, DESPEGAR.COM AR, S.A.,  DECOLAR.COM, LTDA.,

DESPEGAR.COM      CHILE,      S.A.,     DESPEGAR.COM,     DESPEGAR.COM     PERU,

DESPEGAR.COM VENEZUELA, DESPEGAR.COM SPAIN, to halt their unfair competition

and trademark dilution and other improper practices and for damages, and alleges as follows:

## NATURE OF ACTION

1.      This is an action arising primarily under the Lanham Act, 15 U.S.C. § 1125, unfair competition, as well as violations of Florida law.

2.      The fundamental purpose of trademark law is to protect consumers from being confused as to the source or affiliation of the products or services that they seek to buy.  In order to assist consumers in making informed decisions, trademark law encourages companies to develop brand names to differentiate their products and services within the marketplace.  This is accomplished by legally limiting a brand's use to the brand's owner.

3.      Unfortunately, some individuals and entities attempt to take advantage of consumers by marketing their products or services in a manner that improperly uses the brands of others.  In effect, they seek a free ride on the reputation and goodwill of another's brand or the conduct is such that it is improperly harming the brand of another.  The Defendants have knowingly committed these types of infringements.

## THE PARTIES

4.      Plaintiff American Airlines, Inc. ("Plaintiff" or "American Airlines") is a Delaware corporation with a principal place of business at 4333 Amon Carter Boulevard, Fort Worth, Texas 76155.

5.      Defendant Despegar.com USA, Inc. ("D.COM-US") is a Delaware corporation registered to conduct business in the State of Florida.  Its principal place of business is 14 N.E. 1st Avenue, Suite 516, Miami, Florida 33132.  D.COM-US is one of the conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and benefit of all Defendants.  Because D.COM-US caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

6.      Defendant Despegar Online SRL ("D.COM-UY") is based in Uruguay with offices at Ruta 8 Km 17,500, Edificio Synergia, Oficina 101, Zonamerica, Montevideo 1600 UY. D.COM-UY is one of the conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and benefit of all Defendants.  Because D.COM-UY caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

7.      Defendant Despegar.com AR, S.A. ("D.COM-AR") is based in Argentina with offices at Boulevard Corrientes 587, Floor 3, Buenos Aires, Federal Capital C1043ADS. D.COM-AR is one of the conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and benefit of all Defendants.  Because D.COM-AR caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

8.      Defendant Decolar.com, Ltda. ("D.COM-BR") is based in Brazil with offices at Rua Araujo, 216, 7º, Andar, Republica, Sao Palo, SP 0120-020.  D.COM-BR is one of the conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and benefit of all Defendants.  Because D.COM-BR caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

9.      Defendant Despegar.com Chile, S.A. ("D.COM-CH") is based in Chile with offices at Luis Thayer Ojeda 86, Piso 3, Providencia, Santiago.  D.COM-CH is one of the

conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and benefit of all Defendants.  Because D.COM-CH caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

10.     Defendant Despegar.com ("D.COM-MX") is based in Mexico with offices at Avenida Ejercito Nacional, No. 373, piso 3, Granada, Distrito Federal.  D.COM-MX is one of the conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and benefit of all Defendants.  Because D.COM-MX caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

11.     Defendant Despegar.com Peru, S.A.C. ("D.COM-PU") is based in Peru with offices at RUC 20544547756, Calle Martir Jose Olaya #129, Entre 1 y 2 Pardo – Esq. BCO NACION, Lima/Miraflores.  D.COM-PU is one of the conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and benefit of all Defendants.  Because D.COM-PU caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

12.     Defendant Despegar.com Venezuela ("D.COM-VZ") is based in Venezuela with offices at Avenida Francisco de Miranda, Parque Cristal, Torre Oeste, Piso 6, Los Palos Grandes, Caracas.  D.COM-VZ is one of the conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and

benefit of all Defendants.   Because D.COM-VZ caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

13.     Defendant Despegar.com Spain ("D.COM-SP") is based in Spain with offices at Principe de Vergara, 6, 280001, Madrid.  D.COM-SP is one of the conscious, dominant and active forces behind the wrongful acts of complained of herein, such wrongful acts being engaged in for the individual gain and benefit of all Defendants.  Because D.COM-SP caused and materially contributed to the unlawful actions alleged herein and the harm caused to American Airlines, it is therefore responsible and liable to American Airlines for such actions.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §1338(a) and (b).  This Court has jurisdiction over Plaintiff's related common law claims under 28 U.S.C. § 1338(b) and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15.     This Court has jurisdiction over Defendants in that at least one or more of the Defendants are located in this judicial district, transact business in this judicial district, and each have committed tortious acts from within this district.

16.     Through the use of Defendants' websites and through their own conduct, Defendants have committed wrongful acts in Florida, including:

     a.  At least several Defendants share at least one common officer – Mario Fiori. Decisions made by Mr. Fiori relating to the events harming American as described herein were made both in his capacity as president of  D.COM-US and as an officer of D.COM-AR.

     b.  All Defendants actively use their websites *despegar.com* and *decolar.com* (collectively, "Website") for their fraudulent and improper ticketing scheme. Defendants actively use electronic communications on their Website to offer

Florida residents, among others, artificially inflated fares. The fares are inflated due to charges and fees collected by Defendants which are buried in the amount displayed as American's air fare for the destination. This scheme harms American's business in Florida by willfully and maliciously diverting customers from American.

c. All Defendants actively use electronic communications on their Website to target, solicit and offer Florida residents, among others, artificially inflated fares. The fares are inflated due to charges and fees collected by Defendants which are buried in the amount displayed as American's air fare for the destination. This scheme harms Florida residents by causing such customers to (i) lose the opportunity to pay the correct and lower fare on American compared with the fares of competing carriers, or (ii) pay distorted, artificially higher charges and fees for American Airlines tickets than charged by Defendants for comparable tickets of another airlines.

d. All Defendants use their Website for their fraudulent and improper ticketing scheme and have actually obtained sales from Florida residents from the Website. These sales are neither isolated nor infrequent and are believed to be in the millions of dollars annually.

e. Each foreign Defendant makes decisions outside of Florida relating to the portrayal of American Airlines' fares on the Website which cause injury to Florida residents who pay higher fares believing American is charging those fares, when in fact the true fare is actually lower. These decisions harm American's brand and reputation.

f. All Defendants make decisions outside of Florida relating to the portrayal of American Airlines' fares on the Website which cause additional injury to American in that by intentionally making American's fares to appear to be higher, when in fact the true fare is actually lower. These decisions divert customers from American.

g. Defendants have conspired against American Airlines and have committed at least one overt act in Florida in furtherance of that conspiracy, including the use of the Website to display inflated American fares that are targeted to Florida residents, among others.

h. All Defendants are collectively responsible for the operation of the Website, derive substantial revenues from Florida residents who use the Website and they also direct marketing efforts in Florida. There likely are contracts or agreements between Defendants addressing these issues. As such, each foreign Defendant is in fact conducting business in Florida.

i. Fares booked on the Website for travel by Florida residents or to Florida are improperly transferred by Defendants to another travel agency in order to

impact the payment of supplemental commissions (discussed below). Upon information and belief, Defendants have an improper agreement with such third-party travel agents to divide commissions.

17.     Defendants' unlawful acts occurred in this State and in this district and in commerce, were directed to cause and have caused injury to Plaintiff within this district and in commerce.

18.     The foregoing facts demonstrate that Defendants carry on a business in Florida, committed and continue to commit tortious acts in Florida and are causing injury to persons within Florida thereby personally subjecting each one to personal jurisdiction in this Court.

19.     Venue is proper in this district under 28 U.S.C. § 1391, because at least one Defendant, if not all of them, conduct business in the district and the claims asserted against Defendants arose in this district.

## PLAINTIFF AND ITS TRADEMARKS

20.     American Airlines enjoys a reputation in the United States and internationally as a premier airline. American Airlines is one of the world's largest airlines. Together with its affiliates, American Airlines serves 250 cities in over forty countries, with more than 4,000 daily flights in over 1,000 aircraft.

21.     American Airlines has a rich history. For almost 80 years – long prior to Defendants' acts described herein – American Airlines developed global name-recognition and goodwill, and has become a household name. In connection with its business, American Airlines has used and continues to use the trade name American Airlines and the trademarks and service marks "AA" and "AMERICAN AIRLINES", both alone and in connection with other words and designs (hereinafter the "American Airlines Marks").

LAW OFFICES
SHOOK, HARDY & BACON L.L.P.
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171

22.     American Airlines draws its roots from scores of aviation companies founded in the 1920s.  The Aviation Corporation was formed in 1928 to acquire many of these young aviation companies.  In 1930, the Aviation Corporation's airline subsidiaries were incorporated into American Airways, Inc.  In 1934, American Airways became American Airlines, Inc.

23.     On June 25, 1936, American Airlines was the first airline to fly the Douglas DC-3 in commercial service.  On February 16, 1937, American Airlines carried its one-millionth passenger.  American Airlines began trading on the New York Stock Exchange on June 10, 1939.  By the end of the decade, American Airlines was the nation's number one domestic air carrier in terms of revenue passenger miles.

24.     To enhance and give public notice of its trademark rights, American Airlines has obtained numerous federal trademark registrations for many of its American Airlines Marks, the overwhelming majority of which have been in continuous use for more than five years and have become "incontestable" pursuant to Section 15 of the U.S. Trademark Act, also known as the Lanham Act, 15 U.S.C. § 1115(b), including but not limited to:

- AMERICAN AIRLINES, U.S. Registration No. 514,294.  Registered on August 23, 1949 for "air transport of passengers and freight," based on first use in commerce in 1934.

- AA, U.S. Registration No. 514,292.  Registered on August 23, 1949, for "air transport of passengers and freight," based on first use in commerce in 1935.

- AA and Design, U.S. Registration No. 893,040.  Registered on June 16, 1970, for "transportation of passengers by air," based on first use in commerce in 1969.

- AA.COM, U.S. Registration No. 2,339,639.  Registered on April 11, 2000, for "transportation of passengers and cargo by air," based on first use in commerce in 1998.

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

25.    In addition to its registration rights, American Airlines has strong common-law rights in the American Airlines Marks by virtue of the extensive prior use and promotion of the marks in commerce and American Airlines' status as senior user of the marks.

26.    The American Airlines Marks serve as unique and famous source identifiers for American Airlines and its various air transportation and other services.

27.    American Airlines has invested hundreds of millions of dollar in worldwide advertising and marketing in order to build the fame, reputation, and goodwill of the American Airlines Marks. American Airlines advertises through a variety of media, including television, radio, newspapers, magazines, direct mail, and in telephone directories across the country.

28.    American Airlines also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

29.    Through American Airlines' longstanding use of the marks and promotional activities related to the marks, and due to their widespread and favorable public acceptance and recognition, the American Airlines Marks have become distinctive designations of the source of origin of American Airlines' goods and services. The American Airlines Marks have become uniquely associated with American Airlines and its high quality goods and services. These marks are assets of incalculable value as symbols of American Airlines, its quality goods and services, and its goodwill.

30.    By virtue of their extensive use and promotion over the years, the American Airlines Marks have developed valuable distinctiveness and secondary meaning in the marketplace. The American Airlines Marks have achieved a significant and lasting presence in the marketplace, causing the marks to achieve high recognition and value among consumers.

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

31.    The American Airlines Marks are "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. § 1125(c); moreover, the American Airlines Marks became famous prior to Defendants' unlawful acts complained of herein.   As a result of American Airlines' extensive advertising and promotional efforts and its continuous use of the American Airlines Marks, the marks are famous and distinctive and are widely recognized by the general consuming public of the United States as a designation of source of the involved goods and services.

## DEFENDANTS' WEBSITE IS THE HUB OF THE FRAUDULENT SCHEME

32.    Defendants operate together as an online travel agency.   Defendants describe themselves as "the largest Online Travel Agency in Latin America" with a base "in Miami and with a presence in 21 countries throughout the Latin American region and the U.S."

33.    Defendants' fraudulent scheme begins with their travel Website.   The Website is created and operated by Defendants to help travelers by sorting through vast amounts of information and then providing a traveler with options for air travel, accommodations and other services.

34.    The Website is at the center of Defendants' scheme.   It is the hub and each Defendant is a spoke.   Each Defendant uses the Website to target Florida residents, among others, derive revenues from Florida residents and also divert customers from American. Defendants' scheme is blatant and notorious.   Defendants harm both the business reputation of AA and diminish the value of the American Airlines Marks.

35.    Defendants   improperly   discriminate   against   American   Airlines   by misrepresenting the air fares allegedly charged by American on the Website.   Additionally, Defendants also charge higher ticketing fees for bookings on American flights than for bookings

on other airlines.   These improper fare tactics are not disclosed to either actual or potential customers.  Defendants also improperly shift bookings to and from non-affiliated travel agencies in order to affect commission agreements.

Fare Discrimination

36.     With regard to the fares, Defendants have caused their Website to artificially inflate the air fares actually charged by American Airlines for travel to or from Florida, and other locations, by including in the purported American fare amount a portion of a fee charged by Defendants.  This portion of the additional fee is not separately disclosed to the potential or actual customer on the Website at any stage – search, display, booking or purchase – as being part of the fee actually charged by Defendants and not American.

37.     Potential customers thus are being both improperly diverted from American to other airlines mistakenly believing that American is charging a higher airfare for the travel they seek.  Actual customers are deceived into paying an unnecessary and mischaracterized amount for travel they purchase on the Website.

Ticketing Fees

38.     Defendants also charge higher fees for bookings on American Airlines flights. Defendants do not charge those same fees for tickets booked through the Website with other carriers for similar travel.

39.     By varying the fees in this manner, Defendants improperly discriminate against American while appearing to be neutral in their offering of air fare information.   In fact, Defendants even tout a "low fare guarantee" on their Website.

<u>Bookings</u>

40.     Various travel agencies have agreements with American whereby supplemental commissions are paid based on the volume of ticketed fares.  In other words, as these agencies volume of tickets increases, so will the commission to be paid by American.

41.     Because Defendants do not have a supplemental commission agreement with American, they are shifting their own bookings to travel agencies who have such an agreement in order to increase the commissions paid by American to these agencies.  Upon information and belief, Defendants improperly entered into arrangements with such agencies to obtain a share of the supplemental commissions paid by American.

## THE HARM TO AMERICAN AND ITS MARKS

42.     By using American Airlines' name and marks on the Website and in the manner described above, Defendants make it appear that American Airlines endorses the improper business practices of charging higher fees and/or fares for travel on American than for air travel on other airlines thus misleading customers to believe that fares for travel on American are higher than those actually published by American or by any other carrier.

43.     American Airlines has not endorsed or sponsored Defendants' activities in the manner in which they are being conducted.  Nor did American Airlines authorize Defendants to use American Airlines' name, reputation or marks in such a manner.

44.     Consumers who encounter Defendants' unauthorized use of the AA and/or American Airlines Marks in the manner described herein are likely to believe that Defendants and the improper fare and fee charges on the Website are approved by, associated or affiliated with Plaintiff when, in fact, this is not the case.

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

45.     Defendants thus are improperly trading on American Airlines' name and its reputation.   The active use of the Website, the electronic and inaccurate transmission of American Airlines' fare and fee information, the use of American Airlines' name and trademark along with the foregoing misrepresentations is conduct that each Defendant has directly, or indirectly, caused, participated in, consented to, approved or authorized in order to promote their scheme for financial gain.

46.     The effect of Defendants' conduct is to harm Plaintiff and its business reputation because such conduct is likely to cause confusion, to cause mistake, or to deceive the public and the trade to believe that Defendants and their fraudulent services originate with or are related to American Airlines, or are licensed by, sponsored or approved by, connected with, or associated or affiliated with Plaintiff, when this is not the case.

47.     Defendants' conduct thus harms the business reputation of Plaintiff and causes dilution of the distinctive quality of the American Airlines Marks, which are famous. Defendants' dilution of the famous American Airlines Marks began after such marks became famous.

48.     As a result of the aforesaid acts by Defendants, Plaintiff has suffered and continues to suffer substantial damage and irreparable injury.  Plaintiff has no adequate remedy by law, and unless Defendants are restrained and enjoined by the Court, said acts will be continued and will continue to cause damage and irreparable injury to Plaintiff, and to damage Plaintiff's goodwill and business reputation.  Plaintiff cannot ascertain the precise amount of its damages at this time.

49.     Plaintiff has been required to retain undersigned counsel in this matter and agreed to pay counsel a reasonable fee for their services.

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

50.    All conditions precedent to the commencement of this action have occurred or been waived.

### COUNT I
### VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a)
### (False Advertising)

51.    Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 50 above, as if here set forth herein.

52.    Section 1125(a)(1) of the Lanham Act provides in part:

> (a) (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

53.    Defendants' actions, as described above, constitute a false or misleading representation of fact in an advertisement/promotion on the Website concerning American Airlines' fares by wrongfully and falsely attributing to American Airlines certain fares and fees as being charged by American when in fact that is not the case.

54.    Alternatively, even if the information on the Website were literally true or ambiguous, it has the tendency to mislead or deceive consumers.  The information regarding fares and fees on the Website is deceptive in the manner displayed to consumers and misleading in context.

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 ●TELEPHONE (305) 358-5171

55.     Defendants' representations regarding fares and fees information relating to American as displayed on the Website has deceived and has a tendency to deceive customers by materially influencing each consumer's air fare purchasing decision.

56.     Defendants' representations specifically solicit customers in interstate commerce.

57.     Upon information and belief, Defendants willfully and maliciously modified their Website in the manner describe above to misrepresent fares and fees as retaliation for American's decision not to offer Defendants a supplemental commission agreement for ticketed fares.

58.     Defendants' actions have harmed and continue to harm American Airlines and also its actual or potential customers. Plaintiff has no adequate remedy at law.

59.     By virtue of their aforementioned acts, Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT II
## VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(c)
### (Dilution by Tarnishment)

60.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 50 above, as if here set forth herein.

61.     Plaintiff's American Airlines Marks are famous and highly recognized by the general consuming public, and were famous and highly recognized by the general consuming public before Defendants' actions complained of herein.

62.     Defendants' actions, as described above, dilute and are likely to continue to dilute the distinctiveness of Plaintiff's American Airlines Marks and diminish their symbol if quality. prestige and reliability.

63.     Plaintiff has a legitimate concern that its American Airlines Marks and reputation will be irreparably damaged by Defendants' conduct.

64.     Upon information and belief, Defendants willfully and maliciously modified their Website in the manner describe above to harm American Airlines.

65.     Plaintiff has no adequate remedy at law.

66.     By virtue of their aforementioned acts, Defendants have violated the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

## COUNT III
## COMMON LAW UNFAIR COMPETITION

67.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 50 above, as if here set forth herein.

68.     As a result of their actions, as described above, Defendants have misappropriated valuable property rights of Plaintiff, are seeking to trade on the goodwill symbolized by Plaintiff's distinctive American Airlines Marks and reputation.

69.     Members of the purchasing public are likely to be confused and deceived regarding the origin, sponsorship, or approval of Defendants' goods and services and related commercial activities.  Plaintiff has no adequate remedy at law.

70.     By virtue of their aforementioned acts, Defendants have engaged and threaten to continue to engage in unfair competition with respect to Plaintiff.

## COUNT IV
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

71.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 50, 53-59, 57 and 62, above, as if here set forth herein.

LAW OFFICES
SHOOK, HARDY & BACON L.L.P.
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 ●TELEPHONE (305) 358-5171

72.     This is a claim arising under Florida's Deceptive And Unfair Trade Practices Act ("FDUPTA").  Defendants directly violated FDUPTA and/or participated in the acts violative of FUDPTA more fully described below.

73.     FDUPTA "outlaws "[u]nfair methods of competition, and unfair or deceptive acts or practices in the conduct of any trade or commerce...."  §501.202, Fla. Stat.  It provides both equitable and legal remedies to aggrieved parties or persons, including businesses, who have sustained actual losses because of a violation of its provisions. *See* § 501.202(2).

74.     A claim under FDUTPA may also be based on rules promulgated pursuant to the Federal Trade Commission Act or the standards of "unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts." §501.203(3).

75.     49 U.S.C. §41712 and 14 CFR §399.84 govern unfair and deceptive trade practices for, among other things, the sale of air transportation.  Specifically, §399.84(c) states that it is an unfair and deceptive practice for a "ticket agent ... [to] offer additional optional services in connection with the air transportation... whereby the optional service is automatically added to the consumer's purchase if the consumer takes no other action."

76.     In other words, a consumer must affirmatively opt-in to such a service and fee. Defendants' Website offers no such option to customers.

77.     Defendants have committed a deceptive act or unfair practice by endorsing American Airlines' fares (through authorized travel agency agreements) but failing to disclose or provide an opt-in regarding (i) the fees added to American Airlines' air fares, and (ii) the higher fees charged for American Airlines bookings but not for bookings through other airlines for the same travel.  Defendants also failed to disclose monies they earn through Defendants' booking tactics of referring bookings to other agencies.

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 ●TELEPHONE (305) 358-5171

78.     Defendants' conduct violates 49 U.S.C. §41712 and 14 CFR §399.84 and federal decisions thereunder which provide a standard of unfairness and deception, making Defendants conduct a violation of FDUPTA pursuant to §501.203(3).

79.     Additionally, the State of Florida regulates travel agencies.  See Chapter 559.926 *et. Seq.*  Under § 559.9335(10), it is a violation to "misrepresent or deceptively represent"... (d) "[t]he nature or extent of other goods [besides accommodations], services, or amenities offered"... or (e) "[a] purchaser's rights, privileges, or benefits.".  It is also a violation to "do any other act which constitutes fraud, misrepresentation, or failure to disclose a material fact." §559.9334(24).

80.     Defendants are or should be registered travel agencies in the State of Florida. Pursuant to § 559.934, "[a]cts, conduct, practices, omissions, failings, misrepresentations, or nondisclosures which constitute a violation of this part also constitute a deceptive and unfair trade practice for the purpose of s. 501.201 administrative rules promulgated thereunder."  As such, Defendants' violations of Chapter 559 are violations of FDUPTA.

81.     By also engaging in violations of the Lanham Act, Defendants have committed another unfair and deceptive trade practice.

82.     Defendants' conduct caused harm to American Airlines and it has suffered actual damages as a result of Defendants' conduct, including the diversion of customers to other airlines.

## COUNT V
## CONSPIRACY TO VIOLATE THE LANHAM ACT

83.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 50, 53-59, 57 and 62, above, as if here set forth herein.

18

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

84.     At some time unknown to American Airlines, Defendants and likely others entered into an agreement to do an unlawful act or to do a lawful act by unlawful means. Specifically, the Defendants and likely others worked in concert to devise a scheme to improperly discriminate against Plaintiff as more fully described herein.  Among other things, Defendants decided and agreed to mislead and/or misrepresent the American Airlines fares and fees displayed on their Website as compared to those of other airlines.

85.     Defendants committed numerous overt acts in further of the conspiracy including:

a.   communicating with each other verbally, in writing or through electronic means about the American Airlines fares displayed on their Website;

b.   communicating with each other verbally, in writing or through electronic means about the fees charged only for American Airlines fares on their Website;

c.   communicating with each other verbally, in writing or through electronic means about the their agreements to refer bookings to other travel agencies to obtain improper commissions;

d.   making decisions in Florida and elsewhere regarding the changes to the Website that would target, among others, Florida residents and thereby implementing their scheme regarding the displaying of the deceptive fees and fares on the Website;

e.   advertising and marketing in Florida to specifically target residents that would be induced to purchase the inflated fares shown on the Website simply because of the association with the American Airlines Marks, reputation, prestige and integrity;

f.   having representatives of D.COM-AR such as Mariano Fiori travel to Miami to discuss and make decisions relating to Defendants' scheme;

g.   deceptively representing the fees and fares on its Website;

h.   charging Florida customers and others the inflated fares or additional fees without the appropriate disclosures or options;

i.   accepting payment in interstate commerce of the inflated fares and additional fees charged to customers, including those from Florida;

    j.  diverting customers from American Airlines as a result of the fares and fees displayed on the Website.

86.   Defendants' conduct has caused American Airlines to suffer damages, including the loss of revenues from customers diverted to other airlines or the increase in commission expenses for fares transferred to other travel agencies.

**COUNT VI**
**CONSPIRACY TO COMMIT UNFAIR COMPETITION**

87.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 50, 53-59, 57 and 62, above, as if here set forth herein.

88.   At some time unknown to American Airlines, Defendants and likely others entered into an agreement to do an unlawful act or to do a lawful act by unlawful means. Specifically, the Defendants and likely others worked in concert to devise a scheme to trade on the goodwill symbolized by Plaintiff's distinctive American Airlines Marks and reputation, and are thereby likely to confuse and deceive members of the purchasing public regarding the origin, sponsorship, or approval of Defendants' goods and services and related commercial activities. Among other things, Defendants decided and agreed to mislead and/or misrepresent the American Airlines fares and fees displayed on their Website as compared to those of other airlines.

89.   Defendants committed numerous overt acts in further of the conspiracy including:

    a.  communicating with each other verbally, in writing or through electronic means about the American Airlines fares displayed on their Website;

    b.  communicating with each other verbally, in writing or through electronic means about the fees charged only for American Airlines fares on their Website;

    c.  communicating with each other verbally, in writing or through electronic means about the their agreements to refer bookings to other travel agencies to obtain improper commissions;

20

d.  making decisions in Florida and elsewhere regarding the changes to the Website that would target, among others, Florida residents and thereby implementing their scheme regarding the displaying of the deceptive fees and fares on the Website;

e.  advertising and marketing in Florida to specifically target residents that would be induced to purchase the inflated fares shown on the Website simply because of the association with the American Airlines Marks, reputation, prestige and integrity;

f.  having representatives of D.COM-AR such as Mariano Fiori travel to Miami to discuss and make decisions relating to Defendants' scheme;

g.  deceptively representing the fees and fares on its Website;

h.  charging Florida customers and others the inflated fares or additional fees without the appropriate disclosures or options;

i.  accepting payment in interstate commerce of the inflated fares and additional fees charged to customers, including those from Florida;

j.  diverting customers from American Airlines as a result of the fares and fees displayed on the Website.

90.   Defendants' conduct has caused American Airlines to suffer damages, including the loss of revenues from customers diverted to other airlines or the increase in commission expenses for fares transferred to other travel agencies.

## COUNT VII
## CONSPIRACY TO VIOLATE FLORIDA'S
## DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

91.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 50, 53-59, 57 and 62, above, as if here set forth herein.

92.   At some time unknown to American Airlines, Defendants and likely others entered into an agreement to do an unlawful act or to do a lawful act by unlawful means. Specifically, the Defendants and likely others worked in concert to devise a scheme to violate the sale of air transportation as governed by 49 U.S.C. §41712 and 14 CFR §399.84, Florida's

regulation of travel agencies under Chapter 559.926 *et. seq.* and the Lanham Act. Among other things, Defendants decided and agreed to mislead and/or misrepresent the American Airlines fares and fees displayed on their Website as compared to those of other airlines.

93. Defendants committed numerous overt acts in further of the conspiracy including:

   a. communicating with each other verbally, in writing or through electronic means about the American Airlines fares displayed on their Website;

   b. communicating with each other verbally, in writing or through electronic means about the fees charged only for American Airlines fares on their Website;

   c. communicating with each other verbally, in writing or through electronic means about the their agreements to refer bookings to other travel agencies to obtain improper commissions;

   d. making decisions in Florida and elsewhere regarding the changes to the Website that would target, among others, Florida residents and thereby implementing their scheme regarding the displaying of the deceptive fees and fares on the Website;

   e. advertising and marketing in Florida to specifically target residents that would be induced to purchase the inflated fares shown on the Website simply because of the association with the American Airlines Marks, reputation, prestige and integrity;

   f. having representatives of D.COM-AR such as Mariano Fiori travel to Miami to discuss and make decisions relating to Defendants' scheme;

   g. deceptively representing the fees and fares on its Website;

   h. charging Florida customers and others the inflated fares or additional fees without the appropriate disclosures or options;

   i. failing to provide an opt-in provision for the fees charged by Defendants;

   j. accepting payment in interstate commerce of the inflated fares and additional fees charged to customers, including those from Florida;

   k. diverting customers from American Airlines as a result of the fares and fees displayed on the Website.

94.     Defendants' conduct has caused American Airlines to suffer damages, including the loss of revenues from customers diverted to other airlines or the increase in commission expenses for fares transferred to other travel agencies.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and relief as follows:

1.     That, pursuant to 15 U.S.C. §1116, §501.211(1) of FDUPTA and Rule 65, Fed.R.Civ.P., Defendants, their officers, agents, servants, employees, licensors, licensees, attorneys, successors, related companies, parent companies, and assigns, and all those in active concert or participation with them, be forthwith preliminarily and thereafter permanently enjoined and restrained from:

a.     Using the AA designation, or any confusingly similar mark or designation, in connection with the marketing, promotion and sale of travel-related goods or services;

b.     Engaging in any conduct that is likely to induce the mistaken belief that the fees and fares attributable to American Airlines on Defendants' Websites are in any way approved or sponsored by, or affiliated with, Plaintiff;

c.     Unfairly competing with Plaintiff in any manner whatsoever; and

d.     Causing dilution with respect to the American Airlines Marks, or injury to the business reputation of Plaintiff.

2.     That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with the Court and serve upon Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

3.     That Plaintiff be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

     a.     All profits received by Defendants from sales and revenues of any kind made as a result of their infringing and diluting actions, said amount to be trebled;

     b.     All damages sustained by Plaintiff as a result of Defendants' acts of infringement, unfair competition, and dilution, including the diversion of business from American Airlines, and that such damages be trebled;

     c.     Statutory damages as permitted; and

     d.     Punitive damages, in view of the willful nature of Defendants' acts.

5.     That, because of the exceptional nature of this case resulting from Defendants' deliberate infringing and diluting actions, the Court award Plaintiff all reasonable attorneys' fees and costs incurred as a result of this action, pursuant to 15 U.S.C. § 1117.

6.     All reasonable attorney's fees pursuant to §501.2105 of FDUPTA.

7.     Plaintiff shall have such other and further relief as this Court may deem just.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

Dated:  August 1, 2013          BY: _____

Humberto H. Ocariz
Florida Bar No.:  0740860
hocariz@shb.com
**SHOOK, HARDY & BACON, LLP**
201 Biscayne Boulevard, Suite 3200
Miami, Florida 33131
PH: (305) 358-5171 / FX: (305) 358-7470

LAW OFFICES
SHOOK, HARDY & BACON L.L.P.
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171
700370 v1