**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| AMERICAN AIRLINES, INC.,<br><br>              Plaintiff,<br><br>    v.<br><br>DESPEGAR.COM USA, INC., *et al.*,<br><br>              Defendants. | Case No.: 13-22773-CV-ALTONAGA |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendants Despegar.com, USA, Inc. ("Despegar USA"); Despegar Online S.R.L.; Despegar.com.ar S.A.; Decolar.com, Ltda; Despegar.com Chile S.A.; Despegar.com Mexico, S.A. de C.V.; Despegar.com Perú SAC; Servicios On Line 3341 de Venezuela, C.A.; and Despegar.com Spain (collectively, the "Foreign Defendants" and, with Despegar USA, "Defendants"), by their undersigned attorneys, respectfully submit this Memorandum of Law, together with the accompanying Declarations,[1] in support of their Motion to Dismiss the Complaint [ECF 1] ("Complaint") of Plaintiff American Airlines, Inc. ("AA" or "Plaintiff"), pursuant to Rules 12(b)(2) and 12(b)(6) the Federal Rules of Civil Procedure ("Rules").

## PRELIMINARY STATEMENT

AA's Complaint alleges that Defendants are somehow engaging in wrongdoing by selling ***authentic and genuine AA tickets***, which Defendants lawfully acquired, but at prices AA doesn't like. But Defendants' sales are entirely legal and, indeed, form the basis of thousands of internet businesses, from eBay to StubHub. AA tries to attack Defendants' businesses under a tortured theory of false advertising, trademark dilution and unfair competition. In sum, AA claims that Defendants' reselling of authentic and genuine AA tickets somehow causes injury to AA's trademarks and deceives the public.

But no matter how much incendiary language and empty accusations AA employs—such as by labeling Defendants' businesses a "scheme" (18 times)—the reselling of lawfully acquired, genuine and authentic goods *per se* does not give rise to a trademark claim. As a court in this

---

[1]   With this motion, Defendants submit the declarations of: Marc L. Greenwald ("Greenwald Decl.") (attached as Exhibit "1"); Raul Ferro ("Ferro Decl.") (attached as Exhibit "2"); Vince Garcia ("Garcia Decl.") (attached as Exhibit "3"); Alipio Camanzone ("Camanzone Decl.") (attached as Exhibit "4"); Adolfo Sommer ("Sommer Decl.") (attached as Exhibit "5"); Guido Glikin ("Glikin Decl.") (attached as Exhibit "6"); Dirk Zandee ("Zandee Decl.") (attached as Exhibit "7"); Cristian Camsen ("Camsen Decl.") (attached as Exhibit "8"); and Santiago Parra ("Parra Decl.") (attached as Exhibit "9").

District recognized just last year, the resale of genuine goods over the internet—at any price—is protected by the "first sale doctrine" and thus not actionable under the Lanham Act. *See Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349 (S.D. Fla. 2012). For this reason alone, AA's Lanham Act claims (and its state-law and conspiracy claims, all premised on the same allegations), should be entirely dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

Moreover, although the Court need not even address the issue once it grants Defendants' Rule 12(b)(6) motion, the Complaint should also be dismissed as to the Foreign Defendants for lack of personal jurisdiction. As the Declarations makes clear, ***none*** of the Foreign Defendants have any meaningful presence in Florida—they have not solicited, marketed, or advertised to clients in Florida, nor do they generate revenue from Florida customers. Indeed, the first page of Defendants' website instructs users to "select your country of residence"—a user who selects "USA" is directed to a website specifically for U.S. residents, run ***only*** by Despegar USA and not by any Foreign Defendant. On this basis, the Court should dismiss the Complaint as to the Foreign Defendants for lack of personal jurisdiction.

## **RELEVANT FACTUAL ALLEGATIONS**[2]

**A.**   **American Airlines**

AA, which promotes itself as "one of the world's largest airlines" (Compl. ¶ 20), uses its trademarks "AA" and "AMERICAN AIRLINES" (collectively, the "AA Marks") in connection with its business of providing air transportation services (*id.* ¶ 21).

---

[2]   As noted below, while the Court must accept as true all well-pleaded non-conclusory and non-speculative factual allegations in the Complaint as they relate to Defendants' Rule 12(b)(6) motion, the Court need accept as true the jurisdictional allegations in the Complaint as they relate to the Foreign Defendants' Rule 12(b)(2) motion ***only*** to the extent they are uncontroverted.

B.    **How Despegar.com Works**

The website http://www.despegar.com (the "Website")[3] operates as "an online travel agency" (*id.* ¶ 32),  assisting "travelers by sorting through vast amounts of information and then providing a traveler with options for air travel, accommodations and other services" (*id.* ¶ 33). Upon entering the Website, the user first sees the screen below:



(*See* Greenwald Decl., Ex. A.)  "Elija su país residencia" translates to "***Choose your country of residence.***"    (Ferro Decl.,  ¶ 4.)    Upon selecting "USA," the user is directed to http://www.us.despegar.com/ (the "U.S. Website"), which allows the user to enter search criteria for finding airline tickets, including city of departure, destination city, departure date, return date, and number of passengers.  (*See* Greenwald Decl., Ex. B.)

---

3    While AA did not attach images of the Website to its Complaint, it is directly referenced in the Complaint—indeed, it is the centerpiece of AA's allegations.  (*See, e.g.*, ¶ 34 ("The Website is at the center of Defendants' scheme.").)  Thus, the Website may be considered by the Court in connection with the instant motion.  *See, e.g.*, *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (on motion to dismiss, court may consider documents "referenced in the complaint"); *UTI, U.S., Inc. v. Bernuth Agencies, Inc.*, No. 12-21965-cv, 2012 WL 4511304, at *4 (S.D. Fla. Oct. 1, 2012) (Altonaga, J.) (contract, "although not attached to the Complaint, has clearly been incorporated by reference because it is directly referred to in the Complaint").

After entering search criteria, the user is presented with available flight options, including the cost of each option, divided into (1) ticket price, (2) taxes and fees, and (3) booking charges. For example, if the user searches for flights from Miami to Montevideo, she may see:



(*See also* Greenwald Decl., Ex. C.)  The user may then select her preferred flights and book the tickets.  The U.S. Website also has a "Best Price Guaranteed" policy.  This policy, which can be found in English at http://comercial.despegar.com/us-en/betterprice/, states in relevant part:

> **Best price guaranteed or we'll refund the difference**
>
> Our daily job is to help you save time and money when you book your trips. Booking with Despegar.com will guarantee you get the best deal available in the market.  That's why we now guarantee the best rates in **all the products** advertised on Despegar.com.  If you find a cheaper rate anywhere else, we will refund the difference (max. $ 100), at the official rate of exchange, on voucher issuance date.  Said benefit is to be applied in your next booking with us.

(*See* Greenwald Decl., Ex. D.)   A more detailed explanation of this policy is provided at http://comercial.despegar.com/us-en/termsandconditions/.   (*See* Greenwald Decl., Ex. E.)

4

AA does not dispute, and thus concedes, that all airline tickets sold through the Website—including all AA tickets—*are authentic and genuine*.  Further, AA does not dispute, and thus concedes, that all airline tickets sold through the Website—including all AA tickets—*are lawfully acquired* by Defendants (*i.e.*, the tickets are not stolen, but lawfully purchased).

**C.**     **AA's Allegations On The Merits As To All Defendants**

The Complaint alleges that Defendants operate a "fraudulent scheme" (Compl. ¶ 33) in three ways: (1) Defendants allegedly "have caused their Website to artificially inflate the air fares actually charged by [AA] … by including in the purported American fare amount a portion of a fee charged by Defendants" that is "not separately disclosed … as being part of the fee actually charged by Defendants and not [AA]" (*id.* ¶ 36); (2) Defendants allegedly "charge higher fees for bookings on [AA] flights" than for "other carriers for similar travel" (*id.* ¶ 38); and (3) Defendants allegedly "shift[] their own bookings to travel agencies"—who have agreements with AA for supplemental commissions that are paid based on volume of ticketed fares—"in order to increase the commissions paid by [AA] to these agencies" (*id.* ¶¶ 40-41).

**D.**     **AA's Jurisdictional Allegations As To The Foreign Defendants**

While the Complaint properly alleges that Despegar USA is a Delaware corporation registered to conduct business in Florida (*id.* ¶ 5), it does not allege that any Foreign Defendant is a U.S. corporation or registered to do business in Florida (*see id.* ¶¶ 6-13).  Rather, in offering allegations as to the Foreign Defendants in support of personal jurisdiction, AA alleges:

- "At least several Defendants share at least one common officer"—specifically, Mariano Fiori, who is President of Despegar USA and an "officer" of Despegar.com AR, S.A.  (*Id.* ¶ 16a.)

- "All Defendants actively use their websites" by using "electronic communications on their Website to offer Florida residents … artificially inflated fares."  (*Id.* ¶ 16b.)

- "All Defendants actively use electronic communications on their Website to target, solicit, and offer Florida residents … artificially inflated fares." (*Id.* ¶ 16c.)

- "All Defendants … have actually obtained sales from Florida residents" that are "neither isolated nor infrequent."  (*Id.* ¶ 16d.)

- "Each [F]oreign Defendant makes decisions outside of Florida relating to the portrayal of [AA's] fares on the Website …."  (*Id.* ¶ 16e.)

- "All Defendants make decisions outside of Florida relating to the portrayal of [AA's] fares on the Website." (*Id.* ¶ 16f.)

- "Defendants have conspired against [AA] and have committed at least one overt act in Florida in furtherance of that conspiracy …."  (*Id.* ¶ 16g.)

- "All Defendants are collectively responsible for the operation of the Website" and "[t]here likely are contracts or agreements between Defendants" such that "each [F]oreign Defendant is in fact conducting business in Florida."  (*Id.* ¶ 16h.)

- "Fares booked on the Website for travel by Florida residents … are improperly transferred by Defendants to another travel agency in order to impact the payment of supplemental commissions …."  (*Id.* ¶ 16i.)

- "Defendants carry on a business in Florida" and "committed and continue to commit tortious acts in Florida."  (*Id.* ¶ 18.)

Other than the claim that Mr. Fiori is an officer of Despegar.com AR, S.A., AA offers no *individualized* factual allegations in support of personal jurisdiction as to any particular Foreign Defendant, instead lumping all Defendants together through generalized, conclusory accusations.

## E.   **Additional Jurisdictional Facts**

Contrary to the Complaint's allegations, none of the Foreign Defendants have any meaningful contact with Florida or its residents.

***First***, the first page of the Website requires the user to select her country of residence. (Greenwald Decl., Ex. A.)  Each country directs the user to a ***completely different website***. (Ferro Decl., ¶ 5.)  For example, selecting "Chile" directs the user to http://www.despegar.cl, and selecting "Perú" directs the user to http://www.despegar.com.pe.  (*Id.*)  Because U.S. residents

(including Floridians) are directed only to the U.S. Website (*id.*), that is the only relevant website for the purposes of determining personal jurisdiction in this action.[4]

*Second*, each Defendant is associated with a specific nation.  (*Id.* ¶ 6.)[5]  For example, Despegar USA runs the U.S. Website, Despegar.com Chile S.A. runs http://www.despegar.cl (Zandee Decl., ¶ 5), and Despegar.com Perú SAC runs http://www.despegar.com.pe (Camsen Decl., ¶ 5).   One reason that separate entities control each nation-specific website is because different nations have different laws and regulations regarding sales of airline tickets to its residents.  (Ferro Decl., ¶ 6.)  To this end, Despegar USA decides how prices appear on the U.S. Website.  (*Id.* ¶ 7.)  None of the Foreign Defendants make any decisions regarding how prices appear on the U.S. Website; rather, each Foreign Defendant (or an agent) makes decisions on how prices appear on their own nations' websites, in accordance with the laws of those nations. (*Id.*; Camsen Decl., ¶ 5; Camanzone Decl., ¶ 7; Zandee Decl., ¶ 5; Garcia Decl., ¶ 5; Parra Decl., ¶ 5; Sommer Decl., ¶ 5; Glikin Decl., ¶ 5.)

*Third*, none of the Foreign Defendants advertises, markets or otherwise promotes their services to residents in the U.S., let alone Florida in particular, in any meaningful manner.  Each Foreign Defendant has spent *$0* on advertising their websites to Florida residents, and each

---

[4]   According to the Complaint, Defendants also have a website at http://www.decolar.com. (Compl. ¶ 16b).  While the Complaint collectively refers to despegar.com and decolar.com as "the Website" (*id.*) and does not distinguish between them in any way, decolar.com is in fact a website for Brazilian residents, written in Portuguese.  (Camanzone Decl., ¶¶ 4, 5, 7.)  Upon selecting "Brasil" as the country of residence on the Website, the user is directed to decolar.com. (*Id.* ¶ 4.)   There is not an English-language version of decolar.com, and that website is run by Decolar.com, Ltda, a Brazilian entity.  (*Id.* ¶¶ 5, 7.)   Further, decolar.com's "Best Price Guarantee" applies only to legal residents of Brazil.  (*See* Greenwald Decl., Ex. F ("A promessa somente será aplicada para os usuários que residam legalmente no Brasil"); Camanzone Decl., ¶ 6 (translation: "The promise only applies to users who reside legally in Brazil").)

[5]   Despegar.com Spain, a named defendant in this action, is an entity that no longer exists. (Ferro Decl., ¶ 10.)  Thus, Despegar.com Spain has not been served in this action. [ECF 13-1.]

Foreign Defendant has spent *$0* on marketing their websites to Florida residents.  Nor do any of the Foreign Defendants meaningfully target or solicit Florida residents—each Foreign Defendant (or an agent) limits such activities to its respective nations.  (Camsen Decl., ¶¶ 5-10; Camanzone Decl., ¶¶ 7-12; Zandee Decl., ¶¶ 5-10; Garcia Decl., ¶¶ 5-10; Parra Decl., ¶¶ 5-10; Sommer Decl., ¶¶ 5-10; Glikin Decl., ¶¶ 5-10, 12.)  The only entity that has any meaningful business of advertising to, marketing to, or otherwise soliciting U.S. residents (and thus, Floridians) is Despegar USA.  (Ferro Decl., ¶ 8.)

*Fourth*, as far as the Foreign Defendants are aware, no tickets for AA flights have been sold to—and thus, no revenue has been generated from—Florida residents through any website other than the U.S. Website.  Indeed, the only way that an AA ticket could be sold to a Florida resident through one of the Foreign Defendants' websites is if the user misrepresents her country of residence upon visiting the first page.  The Foreign Defendants have no reason to believe that its customers would misrepresent their countries of residence, and thus believe in good faith that any tickets sold to U.S. residents—and particularly, any *AA* tickets sold to *Florida* residents— must have been purchased through the U.S. Website.  (Camsen Decl., ¶ 11; Camanzone Decl., ¶ 13; Zandee Decl., ¶ 11; Garcia Decl., ¶ 11; Parra Decl., ¶ 11; Sommer Decl., ¶ 11; Glikin Decl., ¶ 11.)  AA offers no allegation to the contrary.

## ARGUMENT

While, "[a]s a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims," a court may "bypass the issue of personal jurisdiction if a decision on the merits would favor the party challenging jurisdiction and the jurisdictional issue is difficult."  *Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940-41 (11th Cir. 1997).  Here, it is appropriate for the Court to first address Defendants' motion to dismiss on Rule 12(b)(6) grounds at the outset because AA's failure to state a claim

will dispose of the case against *all* Defendants, while the challenge to personal jurisdiction will dispose of the case only as to the Foreign Defendants.  Thus, it would be in the interest of judicial economy for the Court to address Defendants' Rule 12(b)(6) motion first.

In addition, "before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'"  *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010).  Thus, to the extent the Court addresses the Foreign Defendants' jurisdictional challenge, it should first examine whether AA states a cause of action.  Because it does not, *a fortiori* this Court does not have personal jurisdiction over the Foreign Defendants.

## I.   THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF

"Under Fed. R. Civ. P. 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action."  *Brain Pharma*, 858 F. Supp. 2d at 1352 (citing *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 677).  Further, any "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Here, AA does not clearly explain what is "false or misleading" about the Website.[6]  It appears AA fears that Website visitors who see a high price for an AA ticket would mistakenly believe that such a price is precisely equal to what that ticket would cost if purchased directly from AA.  This simply is not plausible on its face.  There is nothing on the Website that comes close to making such a representation, nor does AA direct the Court to any language where such a conclusion could be drawn.  While a party's well-pleaded ***facts*** must be accepted on a motion to dismiss, its ***speculation*** must be disregarded.  *See id.*  Because this Court is to "draw on its judicial experience and common sense" in determining whether a claim is plausible, *Iqbal*, 556 U.S. at 679, this Court should exercise that common sense, recognize AA's claims as implausible, and dismiss the Complaint in its entirety.  But even if it were plausible that consumers could somehow be confused about whether the prices of Defendants' tickets would differ on another website, such a position is not actionable as a matter of law.

A.      **AA's Lanham Act Claim For False Advertising Claim Is Not Actionable**

In the Complaint, AA claims that Defendants' actions "constitute a false or misleading representation of fact" by "wrongfully and falsely attributing to [AA] certain fares and fees as being charged by [AA] when in fact that is not the case," in violation of the Lanham Act, 15 U.S.C. § 1125(a).  (Compl. ¶ 53.)  Defendants' prices for the sale of authentic and genuine AA tickets, however, are not actionable under the Lanham Act.  The claim should be dismissed.

---

[6]  "A claim for false and misleading advertising is also subject to Rule 9(b) heightened pleading standards."  *Beualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-cv, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011).  Every claim in AA's Complaint is premised entirely on allegations of fraud, but comes nowhere close to meeting this heightened standard.  However, the Complaint even fails under the lower standard of Rule 8, which Defendants assume applies for the purposes of this motion only.

1.      *Defendants' Sales Are Protected By The First Sale Doctrine*

Defendants' resale of authentic and genuine AA tickets is not actionable as a Lanham Act violation under the "first sale doctrine."  As the Eleventh Circuit has explained:

> The resale of genuine trademarked goods generally does not constitute infringement.  This is for the simple reason that consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale.  Under what has sometimes been called the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product.  ***Therefore, even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good does not violate the Act.***

*Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301-02 (11th Cir. 2001) (citations omitted, emphasis added); *see also Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995) ("When a purchaser resells a trademarked article under the producer's trademark, and nothing more, ***there is no actionable misrepresentation under the statute***.") (emphasis added); *Stevo Design, Inc. v. SBR Marketing Ltd.*, 919 F. Supp. 2d 1112, 1122 (D. Nev. 2013) (doctrine applies to service marks where the genuine service is resold).[7]

Here, Defendants resold genuine AA tickets it lawfully obtained.  The Complaint contains no allegations to the contrary.  AA complains only of the ***price*** at which Defendants resell AA tickets, and how Defendants disclose to consumers the components of the ticket price.  But Defendants' websites are not "false or misleading."  Defendants have no obligation to

---

[7]   While the first sale doctrine does not apply where the product or service has been altered such that it is "materially different" from the original, *see Davidoff & CIE*, 263 F.3d at 1303, AA does not allege that there has been any material alteration to AA's services—the tickets indisputably are AA tickets, identical in appearance and function to the tickets that AA sells directly.  AA complains only of the price.  The first sale doctrine also does not apply if a defendant actively creates a false impression that it is an authorized retailer for a plaintiff's products.  Here, AA makes no allegation that Defendants have made such a misrepresentation, and the mere reselling of a product does not constitute such a misrepresentation.  *See Brain Pharma*, 858 F. Supp. 2d at 1354 (fact that "Defendants sold BPI products on their website" does not sufficiently allege defendants misrepresented they were authorized resellers).

disclose the profit margins for tickets it resells, and Defendants make no representations about the prices at which AA or other ticket sellers offer similar tickets.  Because these AA tickets are authentic, Defendants may charge whatever price they see fit on the secondary market.  Indeed, if AA's claim was actionable, *every* reseller that charges a different price for a product than they paid for it would be subject to a lawsuit of "false advertising" unless they disclose their profit margin or mark-up—an absurd result that defies common sense.  The actual text of the Website reinforces this:  On the Website, Defendants inform customers of the price that ***Defendants*** charge for AA tickets, not the price AA charges.  Because Defendants' legitimate resale of authentic AA tickets at the prices they choose is not in any plausible view "false advertising," this claim should be dismissed.

Another court in this District arrived at an identical result last year.  In *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1351-52 (S.D. Fla. 2012), a plaintiff, alleging that a website misrepresented itself to the public as an authorized agent of the plaintiff and sold the plaintiff's products, brought claims of false designation of origin.  The plaintiff alleged that the defendants' sale of its products violated the Lanham Act because it sold them "for less than 50% below retail prices."  *Id.* at 1354.  Judge Cohn dismissed the claim:

> [T]he Court finds that Plaintiff's allegation that Defendants are selling BPI products on their website for less than 50% below retail prices does not state a trademark infringement claim.  As Defendants point out, Plaintiff cites no authority for the fact that selling ***genuine*** trademarked products at a discount constitutes a trademark infringement claim or otherwise defeats application of the first sale doctrine.

*Id.* at 1354-55 (citations omitted).  The same logic applies here—just as the defendants in *Brain Pharma* could resell genuine products at a ***lower*** price, Defendants here may resell genuine AA tickets at a ***higher*** price.  Either way, consumers are not deceived as to the nature, characteristics, qualities, or geographic origin of the goods.  Defendants may resell lawfully acquired tickets

from AA (or AA's competitors) at any price it sees fit.  If AA wishes to change the price at which its tickets are sold, it cannot look to the Lanham Act for shelter.  *See Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 309 (C.D. Cal. 1996) ("[I]f [plaintiff] chooses to price its goods differently, … it cannot look to the Lanham Act to protect its domestic market. … [Plaintiff] must look to other sources of protection, such as exclusive licensing or restrictive distribution agreements."); *see also McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 813 (M.D. Tenn. 2000) (no trademark infringement where customers "received precisely what they expected to receive and, as such, their goodwill remained intact"); *Osawa & Co. v. B & H Photo.*, 589 F. Supp. 1163, 1174 (S.D.N.Y. 1984) (under first sale doctrine, "[s]econdhand dealers may advertise the branded merchandise for resale in competition with the sales of the markholder").

Through this lawsuit, AA seeks to force Defendants to inform customers that certain AA tickets may be cheaper on AA's own website, or that Defendants' prices include fees.  However, by accurately informing customers of the prices of ***Defendants' own AA tickets***, there is no misrepresentation or fraud being committed upon the public, nor any injury to the AA Marks. After AA placed its tickets into the stream of commerce, it can no longer control the prices at or manner in which they are resold.

### 2.      *Defendants' Sales Are Protected By The Nominative Fair Use Doctrine*

Separately, to the extent Defendants refer to any appearance of the AA Marks on the Website, such use is protected by the nominative fair use doctrine.  That is, AA is identified only to the extent necessary to identify the tickets as legitimate AA tickets.  "[O]ne can use another's mark truthfully to identify another's goods or services in order to describe ... its product." *MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, No. 11-24110-cv, 2013 WL 3288039, at *12

(S.D. Fla. June 28, 2013) (quotation marks omitted); *see also Suntree Techs., Inc. v. EcoSense Int'l, Inc.* 802 F. Supp. 2d 1273, 1282 (M.D. Fla. 2011) (using mark to refer to another's product "lies outside the strictures of trademark law" because "it does not imply sponsorship or endorsement by the trademark holder") (quotation marks omitted).  Thus, to the extent that AA's scattershot Complaint also alleges trademark injury to the AA Marks by referencing AA, such claims must be dismissed.[8]

**B.**      **AA's Lanham Act Claim For Dilution Is Not Actionable**

AA's claim of trademark dilution by tarnishment is befuddling.  AA provides no explanation of how the AA Marks "will be irreparably damaged by Defendants' conduct" (Compl. ¶ 63), or how Defendants otherwise will dilute their distinctiveness or "diminish their symbol if [sic] quality. [sic] prestige and reliability" (*id.* ¶ 62).  Because AA fails to offer any factual allegations in support of its dilution claim beyond "a formulaic recitation of the elements," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), this claim should be dismissed.  But even if AA did allege sufficient facts, no such facts could give rise to trademark dilution in this case.

***First***, for the same reasons set forth above, AA's dilution claim should be dismissed under the first sale and nominative fair use doctrines, which apply equally to dilution.  *See*, *e.g.*, *Stevo Design*, 919 F. Supp. 2d at 1124 ("[t]he first sale and nominative fair use doctrines bar

---

[8]     A defendant makes nominative fair use is when: (1) the product is one not readily identifiable without use of the trademark; (2) only so much of the mark is used as is reasonably necessary to identify the product; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.  *See New Kids on the Block v. News America Pub., Inc.,* 971 F.2d 302, 308 (9th Cir. 1992).  Defendants facially satisfy this test—any use of the AA Marks is to (1) identify the air carrier; (2) only uses the marks for that purpose; and (3) does nothing to suggest sponsorship or endorsement.  (*See*, *e.g.*, Greenwald Decl., Ex. C.)

Plaintiff's dilution" claim); 15 U.S.C. § 1125(c)(3)(A) ("[a]ny fair use" is not actionable dilution).

   *Second*, to the extent that AA claims that the AA Marks have been "tarnished" as a result of the prices Defendants charge for AA tickets, such a claim is not actionable.  "Tarnishing occurs when a trademark is 'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'"  *Brain Pharma*, 858 F. Supp. 2d at 1358 (quoting *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 489 (5th Cir. 2004)).  "Merely reselling Plaintiff's genuine products at a discounted price does not constitute dilution by tarnishment."  *Id.*  Thus, selling genuine products at a *higher* price cannot constitute dilution by tarnishment—it is inconceivable that a higher price will link AA with a "lack of quality or prestige."  *Id.*  If anything, the opposite is true—a higher price infers *greater* quality or prestige.[9]  This claim should therefore be dismissed.

## C.   AA's Claim For Common Law Unfair Competition Is Not Actionable

   Because AA cannot state a claim for false advertising, infringement or dilution under the Lanham Act, its claims under common law unfair competition must likewise be dismissed.  *See*, *e.g.*, *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1332-33 (11th Cir. 2008) (dismissing common law unfair competition premised on Lanham Act false advertising claim); *Brain Pharma*, 858 F. Supp. 2d at 1359 (similar as to Lanham Act infringement and dilution claims).

---

[9]   The Complaint does not allege dilution by blurring, but even if it did, such a claim is not actionable because AA does not allege that Defendants used the AA Marks to sell unrelated goods, but rather that Defendants are selling *actual* AA tickets.  This "is not dilution by blurring."  *Brain Pharma*, 858 F. Supp. 2d at 1358.

**D.**      **AA's Claim For Violation Of Florida's Deceptive And Unfair Trade Practices Act Is Not Actionable**

AA claims that Defendants violated Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA") by allegedly: (1) failing to disclose or provide an opt-in regarding Defendants' own fees when purchasing AA tickets (Compl. ¶ 77); (2) violating the regulations covering registered travel agencies in Florida (*id.* ¶ 79) ; and (3) violating the Lanham Act (*id.* ¶ 81). None of these are actionable here.

*First*, AA claims that Defendants violate 14 CFR § 399.84(c), which states:

> When offering a ticket for purchase by a consumer, for passenger air transportation … a direct air carrier, indirect air carrier, an agent of either, or a ticket agent, may not offer *additional optional services* in connection with air transportation, a tour, or tour component whereby the optional service is automatically added to the consumer's purchase if the consumer takes no other action, *i.e.*, if the consumer does not opt out"

(Emphasis added). This provision facially is inapplicable to AA's Complaint.   14 CFR § 399.84(c) prohibits a ticket agent from automatically charging customers for special services *in addition to* the ticket itself, such as travel insurance or priority boarding.  AA does not allege that Defendants automatically add any "additional optional services" to the purchase of AA tickets for which a purchaser may "opt out."   Defendants' own fees are not an "additional optional service"—it is simply the raw price of the ticket.

*Second*, AA claims that Defendants violate Florida Statute § 559.9335(10), which prohibits misrepresentations of "[t]he nature or extent of … goods, services, or amenities offered" or "[a] purchaser's rights, privileges, or benefits."  § 559.9335(10)(d), (e).   But Defendants' resale of genuine AA tickets offers no misrepresentation about *AA's goods or services*, nor does it otherwise deceive consumers as to what they have purchased or the benefits

of such a purchase.  Customers receive precisely what they bargained for (a ticket on an AA flight) at the price they agreed to pay—thus, they suffer no "deception" under this statute.

*Third*, for all of the same reasons stated above, AA's failure to state a claim under the Lanham Act likewise dooms any such premise for a violation of FDUTPA as a matter of law.

### E.    AA's Claims For Conspiracy Are Not Actionable

AA alleges three civil-conspiracy claims—*i.e.*, conspiracy to: (1) violate the Lanham Act (Compl. ¶¶ 83-86); (2) commit unfair competition (*id.* ¶¶ 87-90); and (3) violate FDUTPA (*id.* ¶¶ 91-94).  "An act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy."  *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. Dist. Ct. App. 1981).  Because all of the underlying torts at issue are not actionable, the derivative conspiracy claims likewise must be dismissed.  *See, e.g.*, *Begualg Inv. Mgmt.*, 2011 WL 4434891, at *6 ("Plaintiffs have failed to sufficiently plead the underlying claims at issue in this case, which also warrants the dismissal of the civil conspiracy claim.").[10]

## II.    THE FOREIGN DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION BEFORE THIS COURT

Because the Complaint fails to state a claim against all Defendants for the reasons discussed above, this Court need not address the Foreign Defendants' jurisdictional arguments. However, if this Court determines that AA has stated any valid claims, this Court should nonetheless dismiss the Complaint as to the Foreign Defendants because the Court lacks personal jurisdiction over those particular defendants.

---

[10]   The Complaint alleges that Defendants purportedly entered "agreements" with travel agencies to refer bookings to those agencies to obtain "improper" AA commissions.  (Compl. ¶¶ 85c, 89c, 93c.)  But the Complaint does not explain what is "improper" or unlawful about these alleged arrangements.

In assessing whether it has personal jurisdiction over the Foreign Defendants, this Court must accept the jurisdictional facts as alleged by AA as true only "to the extent they are uncontroverted by the defendant's affidavits." *Van Vechten v. Elenson*, 920 F. Supp. 2d 1284, 1288 (S.D. Fla. 2013). Upon such presentation of affidavits, AA "must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of [its] own." *Id.* at 1288-89. This Court recently stated the test for challenges to personal jurisdiction:

> A federal court may properly exercise personal jurisdiction over a non-resident defendant only if two requirements are satisfied: (1) the state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Thus, if the applicable state statute governing personal jurisdiction is satisfied, the Court must then determine whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment, including "traditional notions of fair play and substantial justice."

*Klayman v. Judicial Watch, Inc.*, No. 13-20610-cv, 2013 WL 4780139, at *5 (S.D. Fla. Sept. 5, 2013) (Altonaga, J.) (citations omitted). The minimum contacts analysis is particularly important here, given that the Foreign Defendants are foreign corporations, and there are "unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102, 114 (1987).

## A.   Florida's Long-Arm Statute Does Not Provide Personal Jurisdiction Here

Florida's long-arm statute contains two provisions relating to non-resident defendants: (1) § 48.193(2) confers general jurisdiction over a defendant "who is engaged in substantial and not isolated activity" in Florida; and (2) § 48.193(1)(a) confers specific jurisdiction if a claim "aris[es] from" a defendant's forum-related contacts. Neither is satisfied here.

*First*, the Court does not have general jurisdiction over the Foreign Defendants. "The defendant's contacts with the forum must be 'continuous and systematic' to support the exercise of general jurisdiction." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Here, the Foreign

Defendants have **no** meaningful contacts with Florida, let alone "continuous and systematic contacts." While AA conclusorily alleges that "[a]ll Defendants are collectively responsible for the operation of the Website" (Compl. ¶16h), as explained in the Declarations, AA's speculation is baseless. (*See* Ferro Decl., ¶¶ 6-8; Camsen Decl., ¶¶ 5-11; Camanzone Decl., ¶¶ 7-13; Zandee Decl., ¶¶ 5-11; Garcia Decl., ¶¶ 5-11; Parra Decl., ¶¶ 5-11; Sommer Decl., ¶¶ 5-11; Glikin Decl., ¶¶ 5-11.)[11]

**Second**, this Court does not have specific jurisdiction over the Foreign Defendants. AA's hodgepodge of jurisdictional allegations (*see* Compl. ¶16a-i) is difficult to address because it is little more than a laundry list that "tracks the language of Florida's [jurisdiction] statute" with "unsupported legal conclusion[s]." *Ellis v. Celebrity Cruises, Inc.*, No. 10-20541-cv, 2010 WL 6730808, at *1 (S.D. Fla. July 15, 2010) (Altonaga, J.) (dismissing complaint offering similarly empty allegations). Further, AA collectively refers to the "Defendants" and the "Website," without specifying **which** defendants and **which** website, as only the U.S. Website targets U.S. residents. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) ("vague and conclusory allegations … are insufficient to establish a prima facie case of personal jurisdiction").[12] However, at a general level, AA claims that the Foreign Defendants: (1) transact business in this District (Compl. ¶¶ 15, 18); (2) "committed wrongful acts" in Florida (*id.* ¶ 16);

---

[11]   Because the Foreign Defendants did not direct any of their activities to **any** U.S. state, they likewise are not subject to personal jurisdiction pursuant to Rule 4(k)(2).

[12]   The Complaint offers no description of any **particular** Foreign Defendant's activities that establishes personal jurisdiction; rather, the Complaint lumps all allegations into a one paragraph (Compl. ¶ 16a-i) and conclusorily alleges the elements of personal jurisdiction over the Foreign Defendants *en masse*, without any individualized allegations. This is independent grounds for dismissing the Complaint as to the Foreign Defendants. *See George & Co., LLC v. Alibaba.com, Inc.*, No. 2:10-cv-719, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) (plaintiff's failure to "distinguish [the] misconduct" from among defendants that "are separate entities, operating in different countries" does not clearly state a claim).

and (3) committed acts that occurred in this State and caused injury to AA in this District (*id.* ¶ 17).

None of these (conclusory) allegations establish specific jurisdiction here.  As detailed above, the first page of the Website requires users to select the "country of your residence."  (*See* Greenwald Decl., Ex. A.)  ***Only*** the U.S. Website, run by Despegar USA, is directed to U.S. residents (Ferro Decl., ¶¶ 6-8); every other website is directed to that particular country's residents  (Camsen Decl., ¶ 5; Camanzone Decl., ¶ 7; Zandee Decl., ¶ 5; Garcia Decl., ¶ 5; Parra Decl., ¶ 5; Sommer Decl., ¶ 5; Glikin Decl., ¶ 5).  Thus, only Despegar USA, and none of the Foreign Defendants, have anything to do with any business in the U.S.  Indeed, the Foreign Defendants: (1) are not Florida corporations; (2) do not have offices or employees in Florida; (3) do not have customers in Florida; (4) do not derive revenue from Florida residents; (5) do not target, solicit or make offers to Florida residents; and (6) do not make decisions relating to the portrayal of AA fares on the U.S. Website.  (Camsen Decl., ¶¶ 5-11; Camanzone Decl., ¶¶ 7-13; Zandee Decl., ¶¶ 5-11; Garcia Decl., ¶¶ 5-11; Parra Decl., ¶¶ 5-11; Sommer Decl., ¶¶ 5-11; Glikin Decl., ¶¶ 5-11.)  *See Horizon Aggressive Growth, L.P. v. RothsteinKass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005); *F & G Research, Inc. v. Dynapoint (Taiwan) Inc.*,  No. 06-60904-cv, 2007 WL 5175171, at *4 (S.D. Fla. Apr. 13, 2007) (Altonaga, J.) (no personal jurisdiction absent evidence that defendant "manufacture[s], market[s] or sell[s] any products in the United States, let alone in Florida").[13]

---

[13]   AA's claim that the fact that various Defendants share a "common officer" (Compl. ¶ 16a) to support personal jurisdiction over the Foreign Defendants is frivolous.  *See*, *e.g.*, *Estate of Miller ex rel. Miller v. Toyota Motor Corp.*, No. 6:07-cv-1358, 2008 WL 516725, at *5 (M.D. Fla. Feb. 22, 2008) ("[t]he mere intermingling of officers and directors does not imply that one corporation acts as a puppet of the other" and thus is not a basis for asserting personal jurisdiction over a corporation).

B.      **The Due Process Clause Does Not Support Personal Jurisdiction Here**

      ***First***, to establish sufficient minimum contacts under due process, the Foreign Defendants' contacts with Florida must satisfy three criteria: (1) the Foreign Defendants' contacts must be related to AA's claims or give rise to them; (2) the Foreign Defendants' contacts must include an act by which the they purposefully availed themselves of the privilege of conducting activities within Florida, "thereby invoking the benefits and protections of its laws"; and (3) the Foreign Defendants' contacts with Florida must be of a nature that they "should reasonably anticipate being haled into court there." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996 ).

      Here, for all of the reasons articulated above, the Foreign Defendants' contacts with Florida are not related, nor do they give rise, to AA's claims.  For the same reasons, the Foreign Defendants did not engage in any conduct availing themselves of the protection of Florida law—the Foreign Defendants run websites directed only to Central and South Americans, to sell airline tickets only to Central and South Americans.  The mere existence of the U.S. Website as the U.S.-based alternative demonstrates that the Foreign Defendants had no intention to make sales in the U.S.  Finally, the Foreign Defendants' (non-existent) contacts with Florida demonstrates that they had no reasonable expectation of being haled into court here.  If anything, ***Despegar USA***, which oversees all U.S. sales and is based in Florida, is the only defendant in this action that would reasonably expect to be brought into court in Florida stemming from sales of tickets to U.S. customers.[14]

---

[14]   *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363 (S.D. Fla. 1999) is instructive on this point.  There, the defendant had interactive websites accessible in Florida. This was not enough to satisfy due process because the defendant "ha[d] not purposefully availed itself of the privilege of doing business in Florida, nor should it have reasonably anticipated being haled into court in Florida," because the websites were "clearly directed" at states other

*(footnote continued)*

**Second**, as to traditional notions of fair play and substantial justice, this Court looks to "the burden on the Defendants in litigating in this forum, the interest of the forum in adjudicating the dispute, the Plaintiff's interest in obtaining convenient and effective relief, and the interest of the judicial system in resolving the dispute." *Klayman*, 2013 WL 4780139, at *12. Here, each of these factors weigh against personal jurisdiction: (1) haling the Foreign Defendant corporations from across South and Central America would impose a substantial burden upon them in defending activities by a website for which they have minimal connection; (2) the interest in the forum of resolving the dispute is already satisfied via the Court's personal jurisdiction over Despegar USA, which is not challenged and which is the sole entity that has any business connected to the United States; (3) AA would receive convenient and effective relief if Despegar USA remains as a named defendant; and (4) a Florida court has little interest in adjudicating claims against far-flung defendants who have nothing to do with this lawsuit.

---

than Florida.  *Id.* at 1367.  Similarly here, the Foreign Defendants' websites are "clearly directed" at their home nations, not Florida (or anywhere else in the U.S.).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) or, in the alternative, dismiss the Complaint as to the Foreign Defendants pursuant to Rule 12(b)(2).

Dated:  September 20, 2013

QUINN EMANUEL URQUHART &
    SULLIVAN, LLP

By:  _/s/ Marc L. Greenwald_____
Marc L. Greenwald (admitted _pro hac vice_)
marcgreenwald@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10011
Tel: (212) 849-7000
Fax: (212) 849-7100

CAREY RODRIGUEZ GREENBERG
    O'KEEFE, LLP
Patrick E. Gonya, Jr.
Florida Bar No. 0100020
pgonya@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
305-356-5478
305-356-3428 fax

_Counsel for Defendants_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2013, I electronically filed the foregoing document with the clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


*/s/Patrick E. Gonya, Jr.*

\*    \*    \*    \*

## SERVICE LIST

Humberto H. Ocariz, Esq.
hocariz@shb.com
Shook Hardy & Bacon, LLP
201 Biscayne Boulevard, Suite 3200
Miami, Florida 33131
Tel: (305) 358-5171
Fax: (305) 358-7470

**Counsel for Plaintiff American Airlines, Inc.**