UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br>                  Plaintiff, <br><br> v. <br><br> DESPEGAR.COM USA, INC., *et al.*, <br><br>                  Defendants. <br><br> DESPEGAR.COM USA, INC., <br><br>                  Counter-Plaintiff, <br><br> v. <br><br> AMERICAN AIRLINES, INC., <br><br>                  Counter-Defendant. | Case No.: 13-22773-CV-GAYLES/TURNOFF |

## AMENDED NOTICE OF HEARING

NOTICE IS HEREBY GIVEN that Defendants (collectively, "Despegar") respectfully request a hearing before Magistrate Judge William C. Turnoff at the C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, 11th Floor, Miami, Florida, 33128 on **Thursday, September 17, 2015 at 2:00 pm** to address: (1) American Airlines' ("AA") failure to answer Despegar's First Set of Interrogatories; (2) AA's objections to the time period for AA's document collection; and (3)  AA's refusal to produce certain documents called for in Despegar's First and Second Set of Requests for Production ("RFPs").

1. **Motion to Compel AA to Answer Despegar's First Set of Interrogatories.** Despegar's first and only interrogatory, served on July 21, 2015, asked AA to identify, for each of the ten operating Defendants, "each and every instance in which AA claims that the Defendant misrepresented on its website an air fare price allegedly charged by AA that gives rise to any claim of false advertising in this Action." On August 24, 2015, AA responded that, pursuant to Fed. R. Civ. P. 33(d), AA will, at some unspecified later

date, "make available its business records . . . and identify the bates numbers of documents containing the information sought by this interrogatory." AA's response is deficient for two reasons. *First*, this interrogatory cannot be fully answered by a reference to AA's business records. AA claims that the way each Despegar entity displayed certain air fares on each website from 2011-2013 were false and misleading under the Lanham Act. To adequately defend themselves, the Despegar defendants are entitled to know which air fare displays AA claims were false or misleading, and what made them so. Unless AA's business records contain each time a Despegar entity displays an AA fare, then the information will not be in the records AA intends to produce. AA has an obligation to provide a substantive response based on information it had already collected as of August 24, 2015. The requested information goes to the core of AA's allegations in the Second Amended Complaint. Presumably, to draft that Complaint, AA already has information responsive to the above interrogatory. *Second*, even if AA could fully answer this interrogatory by reference to business records, it was required by Local Rule 26.1(g)(4)(D) to provide those documents by September 8, 2015. But it did not do so. Nor can AA claim that it has not gathered such documents because the parties are engaged in discussion over the scope of document requests. The Local Rule required AA to search for and produce those documents (if that is how AA intends to answer the interrogatory) within 14 days of its response to the interrogatory, and the parties never agreed to extend that deadline. And in any event, if AA has not gathered the documents, it cannot know if those documents provide a more complete answer. Accordingly, Despegar respectfully seeks an order from the Court compelling AA to immediately provide any responsive information it has available now, based on its pre-complaint investigation, as well as any information gathered to date through discovery. In addition, Despegar respectfully requests that, pursuant to Fed. R. Civ. P. 37(d)(1)(A)(ii), the Court issue sanctions against AA for refusing to respond to Despegar's interrogatory.

2. **Motion To Compel AA To Collect And Produce Documents Created Or Received On Or After August 1, 2009.** At the July 23, 2015 hearing before the Court, AA sought a start date for Despegar's collection of documents, but did not notice any issue as to its own start date. Based on a July 1 letter sent by AA's counsel, Despegar believed that AA

had already agreed to gather documents created or received any time on or after August 1, 2009 – the same start date it was seeking from Despegar. At the hearing, AA's counsel said that AA had not agreed to that date. Despegar intended to meet and confer on the issue after the hearing. AA has since confirmed that it will not honor its representation in its July 1 letter. Despegar therefore seeks an order compelling AA to use the August 1, 2009 collection date. Despegar seeks this start date for two reasons: (1) for AA's false advertising claims, because AA alleges that it is entitled to Despegar's documents going back to August 1, 2009, Despegar is entitled to documents pertaining to AA's claims or defenses going back to the same date; and (2) for Despegar's antitrust counterclaims, the applicable statute of limitations goes back before August 2009 and therefore the same reasoning that applied to AA's request for an August 2009 start date for Despegar's documents applies equally to AA's documents.

3. **Motion To Compel AA To Produce Documents Responsive to Despegar's Requests for Production: 2, 17-19, 23, 86, 169, 243, 244, and 258.**

RFP No. 2: This Request seeks all documents related to any performance reviews or assessments of AA personnel responsible for AA's distribution strategies. AA has objected and refused to produce documents in response to this Request, claiming that the materials are not relevant and contain sensitive personnel information. This Request is likely to lead to the discovery of candid admissions concerning AA's distribution strategies and incentives regarding the same. Further, this Request's burden is minimal, as these documents are likely kept in a central repository. AA's objection that responsive documents may contain sensitive or confidential information is not a valid basis for its refusal to produce responsive documents, as any such information will be shielded from improper disclosure by the protective order agreed upon by the parties in this case.

RFP Nos. 17-19: This Request seeks all documents related to market shares, the nature of price competition, and price transparency in air travel markets or routes involving Latin American cities. AA seeks to limit its production to "documents relating to travel between the United States and the Latin American cities enumerated in Despegar USA's Counterclaim." As Despegar USA's Counterclaim clearly indicates, however, the

enumerated city-pairs are an exemplary list of the routes in which AA enjoys a dominant position. They are not an exhaustive list of the city-pairs at issue in which AA's Direct Connect strategy threatens to dampen competition. Indeed, the enumerated city-pairs only pertain to "Dominant City Pairs," while Despegar USA's Counterclaim also includes allegations concerning "Near Dominant City Pairs." Accordingly, AA's limitation is overbroad.

RFP No. 23: This Request seeks all documents related to the effect of Despegar and Despegar's business on the prices AA charges or could charge for airline travel. AA seeks to limit its response to this Request to the fares AA charges or could charge for airline travel in the "city-pair markets identified in Despegar USA's counterclaim." For the reasons set forth with regard to RFP Nos. 17-19, AA's limitation is overbroad.

RFP No. 86: This Request seeks documents relating to or reflecting a comparison of AA flight information with flight information of any other air carrier published on the Internet. AA seeks to limit this Request to documents relating to or reflecting a comparison of "times, prices, and fees," rather than all flight information, which includes additional categories of information, such as fare classes and the flight origination and destination information. These additional categories of information are necessary to ensure that fares are accurately compared. AA also seeks to further limit this Request only to a comparison of the above information with respect to Despegar's websites, refusing to produce responsive documents regarding flights available on the websites of other online travel agents ("OTAs"). In its Second Amended Complaint ("SAC"), AA alleged that Despegar was not displaying the "true fare" for AA flights and thus it had "discriminated" against AA. Any documents that compare how AA's flight information is displayed on AA's website to the display of that information on any other OTA's website is highly relevant to determining whether there is a indeed a "true fare" for AA flights, as AA has alleged. Indeed, if discovery reveals that Despegar was displaying AA fares in substantially the same way as other OTAs, that evidence would undermine the substance of AA's false advertising claims.

RFP No 169: This Request seeks all documents relating to AA's promotion of its products and services on the Internet, as alleged in Paragraph 38 of the Complaint. AA refuses to produce documents responsive to this Request. AA has an obligation to provide responsive information concerning the allegations in its own Complaint.

RFP No. 243: This Request seeks documents sufficient to show all payments since 2000 by AA to third parties based on the volume of ticketed fares. Despegar has agreed to limit the lower bound of this Request to August 2009. AA initially agreed to produce responsive documents if: (1) the Request was further narrowed to certain OTAs and GDSs; and (2) the lower bound of this Request was limited to August 2010. AA has since refused to produce any responsive documents on the grounds that even the limited subset of documents it was initially willing to produce are not relevant. This Request, however, is likely to lead to the discovery of relevant information. AA has alleged that incentives offered by other airlines and GDSs has induced Despegar to steer consumers to other airlines using "false" fare advertisements. The extent to which AA employs the same types of incentives to third parties is directly relevant to both whether the alleged practices are commonplace within the airline industry and what impact, if any, they have on prices that are displayed by airlines and other travel intermediaries.

RFP No. 244: This Request seeks documents sufficient to establish the portion of ticketed fares booked by each travel agency since 2000, including the portion booked through AA.com. Despegar agreed to limit the lower bound of this Request to August 2009. AA has agreed to produce documents responsive to this Request limited to ticketed fares booked on certain OTAs, but refuses to produce documents from August 2009, instead limiting its production to January 1, 2010. For the reasons described above in ¶2, above, that limitation is overbroad.

RFP No. 258: This Request seeks all documents relating to prior sworn testimony, of any kind in any lawsuit, of any AA director, employee or agent identified in your disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A). Through meet-and-confer discussions, Despegar agreed to limit this Request to lawsuits concerning trademark, false advertising, or

5

antitrust claims. Notwithstanding, AA objected to this Request on the basis that prior testimony may be subject to protective orders in other cases and that Despegar's Request potentially includes affidavits or declarations. Discovery into testimony in other lawsuits is commonplace. In fact, protective orders in many cases expressly contemplate having to produce documents in other lawsuits. In any event, AA has provided no basis to conclude that it is actually precluded from providing the requested information by the protective orders in the relevant cases. If necessary to avoid potential complications presented by protective orders in other cases, Despegar would agree to limit its Request to transcripts of prior sworn testimony and accompanying exhibits produced by AA in the underlying action.

*   *   *   *

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

The undersigned counsel confirms that it has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve this dispute and has been unable to do so.

Dated:  September 11, 2015

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:  */s/ Marc L. Greenwald*
Marc L. Greenwald (admitted *pro hac vice*)
marcgreenwald@quinnemanuel.com
Steig D. Olson (admitted *pro hac vice*)
steigolson@quinnemanuel.com
Todd Anten (admitted *pro hac vice*)
toddanten@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10011
Tel: (212) 849-7000
Fax: (212) 849-7100

Gabriel F. Soledad
gabrielsoledad@quinnemanuel.com
Michael Bonanno
mikebonanno@quinnemanuel.com
777 6th Street, 11th Floor

6

Washington, DC 20001
Tel: (202) 538-8000
Fax: (202) 538-8100

**CAREY RODRIGUEZ MILIAN GONYA, LLP**
Patrick E. Gonya, Jr.
Florida Bar No. 0100020
pgonya@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Tel: (305) 372-7474
Fax: (305) 372-7475
*Attorneys for Defendants / Counter-Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 11, 2015, I electronically filed the foregoing document with the clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List, either via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Patrick E. Gonya, Jr.

**SERVICE LIST**

| | |
|---|---|
| Humberto H. Ocariz | Patrick E. Gonya |
| hocariz@shb.com | pgonya@careyrodriguez.com |
| Michael A. Holt | Carey Rodriguez Milian Gonya, LLP |
| mholt@shb.com | 1395 Brickell Avenue, Suite 700 |
| Shook Hardy & Bacon, LLP | Miami, Florida 33131 |
| 201 Biscayne Boulevard, Suite 3200 | Tel: (305) 372-7474 |
| Miami, Florida 33131 | Fax: (305) 372-7475 |
| Tel: (305) 358-5171 | |
| Fax: (305) 358-7470 | Marc L. Greenwald |
| | marcgreenwald@quinnemanuel.com |
| Charles P. Diamond | Steig D. Olson |
| cdiamond@omm.com | steigolson@quinnemanuel.com |
| Andrew J. Frackman | Todd Anten |
| afrackman@omm.com | toddanten@quinnemanuel.com |
| O'Melveny & Myers LLP | Quinn Emanuel Urquhart & Sullivan, LLP |
| 1999 Avenue of the Stars, 7th Floor | 51 Madison Avenue, 22nd Floor |
| Los Angeles, CA 90067 | New York, New York 10010 |
| Tel: (310) 246-6700 | Tel: (212) 849-7000 |
| Fax: (310) 246-6779 | Fax: (212) 849-7100 |
| | |
| Edward Moss | Gabriel F. Soledad |
| emoss@omm.com | gabrielsoledad@quinnemanuel.com |
| David K. Lukmire | Michael Bonanno |
| dlukmire@omm.com | mikebonanno@quinnemanuel.com |
| Jeffrey A.N. Kopczynski | Quinn Emanuel Urquhart & Sullivan, LLP |
| jkopczynski@omm.com | 777 6th Street, 11th Floor |
| O'Melveny & Myers LLP | Washington, DC 20001 |
| 7 Times Square | Tel: (202) 538-8000 |
| New York, NY 10036 | Fax: (202) 538-8100 |
| Tel: (212) 326-2000 | |
| Fax: (212) 326-2061 | *Attorneys for Defendants/Counter-Plaintiff* |
| | |
| *Attorneys for Plaintiff / Counter-Defendant* | |